**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of New York
(State)

Case number (*If known*): ____________ Chapter 11

❑ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/25

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

1. **Debtor's name**

   Air Baltic Corporation AS

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names, and *doing business as* names

   Akciju Sabiedrība "Air Baltic Corporation"

3. **Debtor's federal Employer Identification Number** (EIN)

   N/A

4. **Debtor's address**

   **Principal place of business**

   Tehnikas Street 3
   Number Street

   Lidosta "Riga"

   Mārupe Parish, Mārupe District LV-1053
   City State ZIP Code

   Latvia
   County

   **Mailing address, if different from principal place of business**

   Number Street

   P.O. Box

   City State ZIP Code

   **Location of principal assets, if different from principal place of business**

   Number Street

   City State ZIP Code

5. **Debtor's website** (URL)

   https://www.airbaltic.com

Debtor Air Baltic Corporation AS
Name

Case number (*if known*)

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: ______

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

4 8 1 1

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7
☐ Chapter 9
☒ Chapter 11. *Check **all** that apply*:

- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).
- ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
- ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
- ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
- ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes. District ______ When ______ Case number ______
MM / DD / YYYY
District ______ When ______ Case number ______
MM / DD / YYYY

Debtor Air Baltic Corporation AS
Name

Case number (if known) ____________________

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes. Debtor See Schedule 1 Relationship See Schedule 1
District Southern District of New York When Date Hereof
MM / DD / YYYY
Case number, if known ____________________

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? ____________________

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other ____________________

**Where is the property?** ____________________
Number Street

____________________

____________________ City ______ State ______ ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency ____________________

Contact name ____________________

Phone ____________________

## Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors** (on a consolidated basis)

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☒ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

Debtor Air Baltic Corporation AS
Name

Case number *(if known)*

**15. Estimated assets** (on a consolidated basis, based on estimated unaudited financial statements as of 12/2025)

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**16. Estimated liabilities** (on a consolidated basis, based on estimated unaudited financial statements as of 12/2025)

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 09/14/2026
MM / DD / YYYY

✘ /s/ Vitolds Jakovļevs
Signature of authorized representative of debtor

Vitolds Jakovļevs
Printed name

Title Authorized Signatory

**18. Signature of attorney**

✘ /s/ Evan Fleck
Signature of attorney for debtor

Date 09/14/2026
MM / DD / YYYY

Evan R. Fleck
Printed name

Milbank LLP
Firm name

55 Hudson Yards
Number Street

New York
City

NY
State

10001
ZIP Code

(212) 530-5000
Contact phone

EFleck@milbank.com
Email address

4012662
Bar number

NY
State

# SCHEDULE 1

Pending Bankruptcy Cases

On the date hereof, each of the entities listed below, including the debtor in this chapter 11 case, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Court"). A motion will be filed with the Court requesting that the chapter 11 cases of each entity listed in the table below be consolidated for procedural purposes only and jointly administered, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, under the case number assigned to the chapter 11 case of Air Baltic Corporation AS.

| COMPANY |
|---|
| Air Baltic Corporation AS |
| Air Baltic Training, SIA |
| Baltijas Kravu Centrs SIA |

Fill in this information to Identify the case:

Debtor Name: AIR BALTIC CORPORATION AS

United States Bankruptcy Court for the: Southern District of New York

Case Number (If known):

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders[1]

12/15

**A consolidated list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff[2] | Unsecured claim |
| 1 | PRATT & WHITNEY<br>400 MAIN STREET<br>EAST HARTFORD, CT 06118<br>USA | CONTACT: KARA MUEHLFELD<br>PHONE: (860) 565-4321<br>Kara.Muehlfeld@rtx.com; gppwpwel@pw.utc.com | MAINTENANCE & SERVICEPROVIDER A/C | | | | $66,517,890.34 |
| 2 | LATVIAN ENVIRONMENT, GEOLOGY AND METEOROLOGY CENTRE (LEGMC)<br>LATGALES IELA 165<br>RĪGA LV-1019<br>LATVIA | PHONE: +371 67 03 26 00<br>lvgmc@lvgmc.lv | ETS SCHEME PAYMENTS | C | | | $42,431,900.00 |
| 3 | REPUBLIC OF LATVIA<br>SMILŠU IELA 1<br>RIGA LV-1919<br>LATVIA | CONTACT: SATIKSMES MINISTRIJA<br>PHONE: +371 67094222<br>pasts@kase.gov.lv; satiksmes.ministrija@sam.gov.lv | GOVERNMENT LOAN | | | | $20,066,586.00 |
| 4 | STATE REVENUE SERVICE OF THE REPUBLIC OF LATVIA<br>TALEJAS IELA 1<br>RĪGA LV-1978<br>LATVIA | PHONE: +371 67120000<br>vid@vid.gov.lv | EMPLOYMENT RELATED TAX PAYABLE | | | | $15,428,310.00 |
| 5 | STARPTAUTISKA LIDOSTA "RĪGA" VAS<br>LIDOSTA "RĪGA" 10/1<br>MARUPES NOV. LV-1053<br>LATVIA | CONTACT: SABINE OZOLINA<br>PHONE: +371 29311817<br>Sabine.Ozolina@riga-airport.com; office@riga-airport.com | AIRPORT | | | | $9,070,533.39 |

[1] The information herein shall not constitute an admission of liability by, nor is it binding on, any Debtors with respect to all or any portion of the claims listed below. Moreover, nothing herein shall affect the Debtors' right to challenge the amount or characterization of any claim at a later date.
[2] The Debtors reserve the right to assert setoff and other rights with respect to any of the claims listed herein.

Debtor: AIR BALTIC CORPORATION AS Case Number (if known):

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 6 | EUROCONTROL<br>RUE DE LA FUSEE 96<br>BRUSSELS 1130<br>BELGIUM | PHONE: +32 2 729 90 01<br>R3.crco@eurocontrol.int | GOVERNMENT | | | | $5,588,579.46 |
| 7 | SHELL ENERGY EUROPE B.V.<br>CAREL VAN BYLANDTLAAN 30<br>THE HAGUE 2596 HR<br>NETHERLANDS | CONTACT: P BAUER<br>PHONE: +31 70 377 9111<br>TRSEELPowerSettlements@shell.com; P.Bauer@shell.com | ALLOWANCES EUETS | | | | $5,439,000.00 |
| 8 | MACQUARIE AIRCRAFT LEASING SERVICES (IRELAND) LIMITED<br>1ST FLOOR<br>CONNAUGHT HOUSE<br>1 BURLINGTON ROAD<br>DUBLIN Dublin 4 IRELAND | CONTACT: JOHN HARTERY<br>PHONE: +086 0227137<br>John.Hartery@macquarie.aero | AIRCRAFT LEASE | | | | $4,671,052.07 |
| 9 | WILMINGTON TRUST SP SERVICES (DUBLIN) LIMITED<br>FOURTH FLOOR<br>3 GEORGES DOCK<br>IFSC<br>DUBLIN Dublin 1 IRELAND | CONTACT: ALINA GAZDIEVA<br>PHONE: +353 1 612 5555<br>alina.gazdieva@castlelakeservices.com; AviationLeaseManagement@castlelake.com | AIRCRAFT LEASE | | | | $3,359,440.33 |
| 10 | AIRBUS FLIGHT HOUR SERVICES LIMITED<br>5TH FLOOR<br>6 GEORGES DOCK<br>IFSC<br>DUBLIN Dublin 1 IRELAND | PHONE: +353 1 791 9750<br>dl-fhs-inv@airbus.com | MAINTENANCE SERVICES & PARTS A/C | | | | $3,282,196.93 |
| 11 | ROHR INC.<br>850 LAGOON DRIVE<br>CHULA VISTA, CA 91910<br>USA | PHONE: (619) 691-2105<br>ar.collections@collins.com | MAINTENANCE SERVICES & PARTS A/C | | | | $2,945,657.55 |
| 12 | JACKSON SQUARE AVIATION IRELAND LIMITED<br>3 BALLSBRIDGE PARK<br>DUBLIN Dublin 4<br>IRELAND | CONTACT: JINDRICH PROKUPEK<br>PHONE: +353 1 551 8883<br>invoice@jsa.com; jprokupek@jsa.com | AIRCRAFT LEASE | | | | $2,632,914.10 |
| 13 | APF 5 PROJECT NO.2 LIMITED<br>BLOCK 1<br>BLANCHARDSTOWN CORPORATE PARK<br>BALLYCOOLIN<br>DUBLIN Dublin 15 IRELAND | CONTACT: NATALIE SIMPSON<br>PHONE: +353 1 6790800<br>natalie.simpson@crowleysdfk.ie | AIRCRAFT LEASE | | | | $2,518,717.31 |
| 14 | SCHIPHOL NEDERLAND B.V.<br>EVERT VAN DE BEEKSTRAAT 202<br>SCHIPHOL 1118 CP<br>NETHERLANDS | PHONE: +31 20 7940800<br>accountsreceivable@ar.schiphol.nl | AIRPORT | | | | $2,349,985.91 |
| 15 | RIXJET SIA<br>MAZA GRAMZDAS IELA 9<br>LIDOSTA "RĪGA"<br>MARUPES PAG.<br>MARUPES NOV. LV-1053 LATVIA | CONTACT: IEVA SIMSONE<br>PHONE: +371 26119555<br>ieva.simsone@rixjetriga.lv; dispecers@rixjetriga.lv | FUEL SUPPLIERS AND RELATED SERVICES | | | | $1,668,613.88 |
| 16 | ARTEMIS FUNDING LIMITED<br>118 LOWER BAGGOT STREET<br>DUBLIN Dublin 2<br>IRELAND | CONTACT: CATHAL KYLE<br>PHONE: +44 1133 604 500<br>invoicing@Azorra.com; ckyle@Azorra.com | AIRCRAFT LEASE | | | | $1,663,742.71 |

Debtor: AIR BALTIC CORPORATION AS Case Number (if known):

| Name of creditor and complete mailing address, including zip code | | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 17 | LIETUVOS ORO UOSTAS<br>RODŪNIOS KELIAS 10A<br>VILNIUS LT-02189<br>LITHUANIA | PHONE: +370 5 273 9326<br>accounting@ltou.lt | AIRPORT | | | | $1,595,827.83 |
| 18 | TALLINNA LENNUJAAM AS<br>TARTU MNT 101<br>TALLINN 10112<br>ESTONIA | CONTACT: MARJU ELSTER<br>PHONE: +372 605 8888<br>raamatupidamine@tll.aero;<br>marju.elster@tll.aero | AIRPORT | | | | $1,465,987.88 |
| 19 | AXIOM BALTIC SERVICES LTD<br>27 HOSPITAL ROAD<br>GEORGE TOWN, GRAND CAYMAN<br>KY1-9008<br>CAYMAN ISLANDS | CONTACT: HANNE MOLLER<br>hm@axiomgroup.com | AIRCRAFT LEASE | | | | $1,375,989.28 |
| 20 | HAUPTZOLLAMT FRANKFURT<br>HAHNSTRAßE 68-70<br>FRANKFURT AM MAIN 60528<br>GERMANY | PHONE: +49 69 257829-0<br>sg-f.hza-ffm@zoll.de-mail.de | GOVERNMENT | | | | $1,279,608.53 |
| 21 | HIGH RIDGE AVIATION TRADING 5 LIMITED<br>SUITE 4<br>RINEANNA HOUSE<br>SHANNON FREE ZONE<br>SHANNON, CO. CLARE IRELAND | PHONE: +61475854<br>Contracts@highridgeaviation.com | AIRCRAFT LEASE | | | | $1,113,237.08 |
| 22 | LATVIJAS GAISA SATIKSME VAS<br>MUZEJU IELA 3<br>LIDOSTA "RĪGA"<br>MARUPES NOV. LV-1053<br>LATVIA | CONTACT: INARA ANCANE<br>PHONE: +371 67 300 950<br>inara.ancane@lgs.lv | GOVERNMENT | | | | $1,049,768.71 |
| 23 | MACH AOE 2 DESIGNATED ACTIVITY COMPANY<br>5TH FLOOR<br>THE ANCHORAGE<br>17-19 SIR JOHN ROGERSONS QUAY<br>DUBLIN Dublin 2 IRELAND | CONTACT: CHRIS MARY JACOB<br>PHONE: +353 1 674 0100<br>chris-mary.jacob@airbornecapital.aero;<br>dhruva.palaye@airbornecapital.aero | AIRCRAFT LEASE | | | | $1,043,058.20 |
| 24 | AIRO CATERING SERVICES LATVIJA SIA<br>LIDOSTA "RĪGA"<br>MARUPES PAG.<br>MARUPES NOV. LV-1053<br>LATVIA | PHONE: +371 67207201<br>debitori@airo.lv;<br>info@lsgskychefs.com | GOODS AND SERVICEPROVIDER | | | | $1,025,025.46 |
| 25 | AVAP LEASING EUROPE VI PTE LTD<br>65 KAMPONG BAHRU ROAD<br>SINGAPORE 169370<br>SINGAPORE | CONTACT: ADAM FARID<br>PHONE: +65 6252 2077<br>adamfarid@aberdeenconsulting.com;<br>avation@aberdeenconsulting.com | AIRCRAFT LEASE | | | | $942,878.62 |
| 26 | MEDIABRANDS DIGITAL OU<br>TEHNIKA TN 55<br>TALLINN 10136<br>ESTONIA | CONTACT: ARVED<br>PHONE: +372 666 1280<br>arved@mbd.ee;<br>siim@mbd.ee | GOODS AND SERVICEPROVIDER | | | | $935,297.16 |

Debtor: AIR BALTIC CORPORATION AS Case Number (if known):

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 27 | HAMILTON SUNDSTRAND CORPORATION<br>1 HAMILTON RD<br>WINDSOR LOCKS, CT 06096-1000<br>USA | PHONE: 860654-6000<br>ar.collections@collins.com;<br>goodrichssc.creditcontrol@collins.com | OUTSIDE MAINTENANCE & SERVICE PROVIDER A/C | | | | $778,782.37 |
| 28 | MALAHIDE AIRCRAFT LEASING LIMITED<br>18 LEESON STREET LOWER<br>DUBLIN Dublin 2<br>IRELAND | PHONE: +44 (0) 1707 271777<br>bc-notifications@falko.com;<br>portfoliomanagement@falko.com | AIRCRAFT LEASE | | | | $760,937.13 |
| 29 | MEGGITT AEROSPACE LTD<br>PILOT WAY<br>ANSTY BUSINESS PARK<br>COVENTRY CV7 9JU<br>UK | CONTACT: KATHARINE WALTHAM<br>PHONE: +44 (0)24 7682 6900<br>FSSC-I2C-Comms@meggitt.com;<br>katharine.waltham@Parker.com | MAINTENANCE SERVICES & PARTS A/C | | | | $738,562.69 |
| 30 | AIRBUS CANADA LIMITED PARTNERSHIP<br>13100 BOULEVARDE HENRI-FABRE<br>MIRABEL, QC J7N 3C6<br>CANADA | PHONE: (514) 855-2000<br>ar_remittance@aero.bombardier.com;<br>agbs.can_collections@airbus.com | OUTSIDE MAINTENANCE & SERVICE PROVIDER A/C | | | | $719,601.52 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AIR BALTIC CORPORATION AS, | ) | Case No. 26 - [________] ( ) |
| Debtor. | ) | (Joint Administration Requested) |

**CORPORATE OWNERSHIP STATEMENT**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of Air Baltic Corporation AS's equity:

| Equity Holder | Percentage of Interests Held |
|---|---|
| Deutsche Lufthansa AG | 10% |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AIR BALTIC CORPORATION AS, | ) | Case No. 26- [_______] ( ) |
| Debtor. | ) | (Joint Administration Requested) |

**LIST OF EQUITY HOLDERS**
**PURSUANT TO FED. R. BANKR. 1007**

Pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure, the following identifies all holders having an equity ownership interest in the above-captioned debtor in possession:[1]

| Equity Holder | Last Known Address | Percentage of Equity Held |
|---|---|---|
| Republic of Latvia (Ministry of Transport) | Gogoļa iela 3, Rīga, LV-1743, Latvia | 88.37% |
| Deutsche Lufthansa AG | Lufthansa Aviation Center, Airportring, 60546 Frankfurt am Main, Germany | 10% |
| Aircraft Leasing 1, SIA | Kr. Valdemāra iela 21-11, Rīga, LV-1010, Latvia | 1.62% |
| Frontier Enterprises SIA | Kr.Barona iela 64-8, Rīga, LV-1011, Latvia | <0.01% |
| OJSC Transaero Airlines | 11A, Zubovsky Boulevard, Moscow 119021, Russia | <0.01% |
| Redacted | On File | <0.01% |

[1] The Debtors will be seeking permission to redact certain personally identifiable information.

**Fill in this information to identify the case and this filing:**

Debtor Name Air Baltic Corporation AS

United States Bankruptcy Court for the: Southern District of New York (State)

Case number (*If known*): ______________________

# Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

**12/15**

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☒ Other document that requires a declaration Corporate Ownership Statement; Equity Holders List

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 09/14/2026
MM / DD / YYYY

✘ /s/ Vitolds Jakovļevs
Signature of individual signing on behalf of debtor

Vitolds Jakovļevs
Printed name

Authorized Signatory
Position or relationship to debtor

airBaltic

Executive Board Meeting No 78E/2026
Classification: Confidential
Date: 13th September 2026
Venue: electronic voting
Resolution

**Executive Board's Resolution No EB 04-78E/2026-1**

**Whereas,**

(A) As previously assessed in Executive Board Resolution No. EB 03-33E/2026-1, adopted on 21 April 2026, Air Baltic Corporation AS ("**Air Baltic**") has been experiencing acute financial stress due to a combination of financial and geopolitical factors. This was evidenced by the EUR 30,000,000 State loan granted in April 2026 and the subsequent deterioration in the Air Baltic's forecast liquidity position;

(B) Air Baltic's liquidity position has since deteriorated further, partly due to additional challenges, including increased fuel costs arising from the crisis in the Middle East;

(C) Accordingly, to develop a comprehensive solution to Air Baltic's financial difficulties and stabilise its operations over the long term, Air Baltic engaged Seabury Aviation Partners LLC to assist in preparing a revised business plan and engaged Milbank LLP and Clyde & Co LLP to advise on and assist with the restructuring discussions;

(D) With the assistance of Seabury and Air Baltic's other advisers, Air Baltic prepared the Long-Term Business Plan Review 2026–2031 (the "**Business Plan**"), which was supported by the Executive Board pursuant to Resolution No. EB 04-50/2026-1 and by the Supervisory Board pursuant to Resolution No. SB 02-04E/25-001. The Business Plan contemplates, among other measures, a more concentrated route network centred on Riga, an optimised fleet, enhanced financial discipline and a restructuring of the Group's balance sheet;

(E) The Executive Board has received and reviewed certain materials presented by the management of Air Baltic and Air Baltic's financial and legal advisors, including, but not limited to, a chapter 11 presentation, and materials regarding the liabilities and obligations of Air Baltic, Air Baltic Training, SIA ("**ABT**"), and Baltijas Kravu Centrs SIA ("**BKC**" and each of Air Baltic, ABT, and BKC, a "**Company**"), their liquidity, strategic alternatives available to them, and the effect of the foregoing on their businesses and has had adequate opportunity to consider such materials and strategic alternatives. In reaching its conclusions, the Executive Board has relied on the information and analyses provided by the Air Baltic's management and its financial and legal advisors and has independently evaluated the restructuring alternatives available to Air Baltic in light of its current financial condition, liquidity needs and the interests of Air Baltic and its stakeholders;

(F) Implementing the Business Plan and maintaining sufficient liquidity pending completion of the restructuring requires substantial additional financing. Accordingly, together with Air Baltic's financial and legal advisors, the Executive Board conducted a market process for interim financing and evaluated four indicative financing proposals and other restructuring alternatives reasonably available to Air Baltic, including a restructuring under Part 26A of the Companies Act 2006 of England and Wales supported by interim bond financing, proceedings under Chapter 11 of the United States Bankruptcy Code supported by debtor-in-possession financing ("**DIP Financing**"), EU State aid, Latvian legal protection or insolvency proceedings, alternative private financing and an orderly contingency plan. In evaluating those alternatives, the Executive Board

took into account, among other matters, their deliverability, execution certainty and expected impact on Air Baltic;

(G) In view of Air Baltic's urgent liquidity needs and the risk that inaction could result in an immediate insolvency filing and substantial loss of value, the Executive Board considered deliverability and execution certainty to be principal considerations in evaluating the available financing alternatives. The proposal from the Ad Hoc Group of existing Bondholders, including Klirmark Capital 4 Ltd, together with Polus Capital Management Limited (the "**AHG Proposal**"), was initially considered the most deliverable option because of its funding commitments, backstop arrangements and alignment with a material group of existing Bondholders. Air Baltic therefore continued to advance the AHG Proposal while concurrently evaluating two recently received Chapter 11 financing proposals and retaining the ability to pursue the restructuring alternative that would best serve Air Baltic's interests;

(H) Following the Executive Board's previous consideration of the available alternatives, the proposal of investment funds and accounts managed directly or indirectly by Strategic Value Partners, LLC for debtor-in-possession financing in connection with a potential Chapter 11 process progressed to committed and executable terms. Based on the information currently available and the advice received from Air Baltic's financial and legal advisors, and having assessed the proposed DIP Financing and all relevant circumstances, including its financial terms, execution requirements, deliverability and overall impact on Air Baltic, and after consulting with its advisers, the Executive Board has concluded that the proposed DIP Financing offers a more favourable and deliverable outcome than the interim bond financing previously contemplated in connection with the Part 26A restructuring and provides a better prospect of addressing Air Baltic's urgent liquidity requirements, preserving its business and enterprise value and achieving its restructuring objectives on less restrictive terms;

(I) The Executive Board has further concluded that, because the proposed DIP Financing is available only in connection with proceedings under Chapter 11, commencing Chapter 11 proceedings represents the restructuring alternative that best preserves the value of Air Baltic and protects the interests of Air Baltic, its creditors, shareholders, employees and other stakeholders. Accordingly, the Executive Board considers the preferred way forward for Air Baltic to discontinue the restructuring under Part 26A of the Companies Act 2006 of England and Wales and instead pursue the Chapter 11 process and the related DIP Financing;

(J) The Cabinet of Ministers, at its meeting held on 10 September 2026, approved the proposed Chapter 11 restructuring and the related DIP Financing and mandated the Ministry of Transport, in its capacity as the holder of the State's capital shares in Air Baltic, to vote in favour of the proposal at the Extraordinary Shareholders' Meeting;

(K) At the Extraordinary Shareholders' Meeting held on 11 September 2026, the Shareholders authorised the Executive Board to discontinue or refrain from implementing the restructuring under Part 26A of the Companies Act 2006 of England and Wales and to commence, pursue and implement proceedings under Chapter 11 of title 11 of the United States Code and the related DIP Financing, subject to the Executive Board determining that the conditions approved by the Shareholders are satisfied;

(L) The Executive Board has determined that the conditions approved by the Shareholders have been satisfied and that the implementation of the Chapter 11 restructuring and the related DIP Financing is therefore in accordance with the authorisation granted by the Shareholders Meeting;

(M) Accordingly, having determined that the conditions approved by the Shareholders have been satisfied and having obtained the approvals of the Supervisory Board, the Cabinet of Ministers and the Shareholders' Meeting, the Executive Board proceeds with the implementation of the Chapter 11 restructuring, the related DIP Financing and the transactions contemplated thereby;

(N) Air Baltic, as the sole shareholder of each of ABT and BKC, has determined, in its judgment as sole shareholder, that it is in the best interest of each of ABT and BKC, and each of its stakeholders and its creditors, respectively, that each of ABT and BKC file or cause to be filed a Chapter 11 Petition in the Bankruptcy Court or files or causes to be filed any other petition, motion, or other pleading for relief or recognition or other order in connection with the Chapter 11 Cases;

(O) On 10 September 2026, the Supervisory Board adopted the Supervisory Board Resolution, acknowledging the Executive Board's assessment, concurring with the Executive Board's conclusion that the proposed restructuring under Chapter 11 of title 11 of the United States Code together with the related DIP Financing represents the preferred restructuring alternative for Air Baltic and granting its prior approval pursuant to Articles 6.5.9 and 6.5.11 of the Articles of Association of Air Baltic.

**The Executive Board resolves:**

**1. APPROVAL OF DOCUMENTS**

1.1. In the judgment of the Executive Board, it is desirable and in the best interest of Air Baltic, its stakeholders, and its creditors, that the following resolutions (the “**Resolutions**”) be adopted and the actions contemplated thereby be authorized and approved;

1.2. Air Baltic, as the sole shareholder of each of ABT and BKC, has determined, in its judgment as sole shareholder, that it is desirable and in the best interest of each of ABT and BKC, its stakeholders, and its creditors, respectively, that the following Resolutions be adopted and the actions contemplated thereby be authorized and approved;

1.3. It is noted that in connection with the Chapter 11 Petitions and/or motions or other pleadings to be filed therewith (the “**Documents**”), each Company may need to further negotiate final versions, enter into, execute, deliver and/or perform, as applicable, any further agreements, documents, deeds, powers of attorney, agreements, amendments, supplements, security agreements, resolutions, notices, acknowledgments, letter agreements, memoranda, letter statements, certificates, instructions or other instruments as may be ancillary, necessary, required or useful (the “**Related Documents**”).

**2. CHAPTER 11 FILING**

2.1. The Executive Board determines that, having obtained the approvals of the Supervisory Board, the Cabinet of Ministers and the Extraordinary Shareholders' Meeting, it is in the best interest of Air Baltic, its stakeholders, and its creditors, that Air Baltic files or causes to be filed a Chapter 11 Petition in the Bankruptcy Court or files or causes to be filed any other petition, motion, or other pleading for relief or recognition or other order in connection with the Chapter 11 Case;

2.2. Air Baltic, as the sole shareholder of each of ABT and BKC, has determined, in its judgment as sole shareholder, that it is desirable and in the best interests of each of ABT and BKC, its stakeholders, and its creditors, respectively, that each of ABT and BKC file or cause to be filed a Chapter 11 Petition in the Bankruptcy Court or file or cause to be filed any other petition, motion, or other pleading for relief or recognition or other order in connection with the Chapter 11 Cases;

2.3. Each Authorised Person (as defined below), acting alone or in any combination on behalf of each Company shall be, and each of them individually hereby is, authorised to pay, or cause to be paid, all fees, expenses, premiums and other amounts incurred in connection with the Chapter 11 Cases and the transactions contemplated thereby, and all fees, expenses, premiums and other amounts appropriate in order to effectuate the purposes and intent of the Chapter 11 Cases and these Resolutions;

2.4. Each of (i) the Executive Board members of Air Baltic, and (ii) Erno Kalle Ilari Hildén, Vitolds Jakovļevs, and Edgars Pundurs, acting alone or in any combination (each, an "**Authorised Person**"), shall be, and hereby are, authorised, empowered and directed to execute, acknowledge, deliver and verify the Chapter 11 Petitions and to cause the same to be filed with the Bankruptcy Court at such time as such Authorised Person may determine;

2.5. Each Authorised Person, acting alone or in any combination on behalf of each Company, shall be, and hereby is, authorised, empowered and directed to take all action to notify, or to obtain any authorisations, consents, waivers or approvals of, any third party that such Authorised Person deems necessary, appropriate or advisable in connection with the Chapter 11 Cases;

2.6. Each Authorised Person, acting alone or in any combination on behalf of each Company, shall be, and hereby is, authorised, directed and empowered to execute, acknowledge, deliver, verify and file the Documents, and any and all petitions, schedules, statements of affairs, lists, motions, pleadings, applications, and other papers and to take any and all related actions that such Authorised Persons may deem necessary or proper in connection with the filing, commencement, or prosecution of the Chapter 11 Cases;

2.7. Each Authorised Person, acting alone or in any combination on behalf of each Company, shall be, and hereby is, authorised, directed and empowered to perform the obligations of each Company under the Bankruptcy Code, with all such actions to be performed in such manner, and all such certificates, instruments, guarantees, notices and documents to be executed and delivered in such form, as the Authorised Person performing or executing the same shall approve, and the performance or execution thereof by such Authorised Person shall be conclusive evidence of the approval thereof by such Authorised Person and by each Company; and

2.8. Each Authorised Person, acting alone or in any combination on behalf of each Company, shall be, and hereby is, authorised, directed and empowered to cause each Company to enter into, execute, deliver, certify, file, record and perform such agreements, deeds, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities, certificates or other documents, to pay all expenses, including filing fees, and to take such other actions, as in the judgment of such Authorised Persons, shall be necessary, proper and desirable to ensure the successful completion of the Chapter 11 Cases and to effectuate the restructuring, recapitalisation or liquidation of each Company's debt, other obligations, organisational form and structure and ownership of each Company, all consistent with these Resolutions and to carry out and put into effect the purposes of these Resolutions, and the transactions contemplated by these Resolutions, their authority thereunto to be evidenced by the taking of such actions.

**3. RETENTION OF PROFESSIONALS**

3.1. Each Authorised Person, acting alone or in any combination on behalf of each Company, shall be, and hereby is, authorised, empowered and directed to employ the following professionals on behalf of each Company: (i) the law firm of Milbank LLP, as general bankruptcy counsel, (ii) the law firm of Cobalt Latvia, as corporate co-counsel, (iii) the law firm of Clyde and Co, as corporate co-counsel, (iv) Seabury Securities LLC, as financial advisor and investment banker, (v) Epiq Corporate Restructuring, LLC, as notice, claims and solicitation agent, and (vi) any other legal counsel, accountants, financial advisors, restructuring advisors or other professionals the Authorised Persons deem necessary, appropriate or advisable; each to represent and assist each Company in its Chapter 11 Cases and carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and applicable law (including, but not limited to, the law firms filing any pleadings and responses); and in connection therewith, each of the Authorised Persons be, and is authorised, empowered and directed, in accordance with the terms and conditions of these Resolutions, to execute appropriate retention agreements and to cause to be filed and prosecute appropriate applications for authority to retain and employ such professionals.

**4. DEBTOR-IN-POSSESSION FINANCING**

4.1. Consistent with the foregoing, and having obtained the approvals of the Supervisory Board, the Cabinet of Ministers and the Extraordinary Shareholders' Meeting, in the judgment of the Executive Board, it is desirable and in the best interest of Air Baltic, its stakeholders, and its creditors, to obtain the benefits of the incurrence of the DIP Financing as described in the commitment letter and attached DIP Term Sheet presented to the Supervisory Board in an aggregate principal amount of EUR 350,000,000 by and among Air Baltic, ABT, and BKC, on one hand, and the lenders thereto (the "**DIP Lenders**"), on the other hand, to fund each Company's ongoing operations during the Chapter 11 Cases;

4.2. Air Baltic, as the sole shareholder of each of ABT and BKC, has determined, in its judgment as sole shareholder, that it is desirable and in the best interests of each of ABT and BKC, its stakeholders, and its creditors, respectively, to obtain the benefits of the DIP Financing to fund each Company's ongoing operations during the Chapter 11 Cases;

4.3. Each Company shall be, and hereby is, and the Authorised Persons shall be, and each of them, acting alone, hereby is, in the name and on behalf of each Company, empowered and directed, to negotiate, execute and deliver the DIP Financing on the terms and conditions such Authorised Persons executing the same may consider necessary, proper or desirable, and to take such additional action and to execute and deliver each other agreement, instrument or document and future amendments, restatements, modifications or other supplements to any of the foregoing, to be executed and delivered, in the name and on behalf of each Company, pursuant thereto or in connection therewith (such documents, the "**DIP Financing Documents**"), all with such changes therein and additions thereto as any Authorised Persons approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof, provided that such changes do not materially increase the obligations of the Companies or materially reduce the financing available under the DIP Financing compared with the terms approved by these Resolutions;

4.4. Each Company shall be, and hereby is, authorised to secure payment of the loans or other extensions of credit made under the DIP Financing Documents, interest thereon, and fees and expenses related thereto, and payment and performance of all other obligations and liabilities of each Company and its direct or indirect subsidiaries arising under, out of, or in connection with, the DIP Financing Documents by pledging and granting to the DIP Lender, a lien or mortgage on or security interest in, a portion of each Company's assets as contemplated by the DIP Financing; and

4.5. Each Company shall be, and hereby is, and the Authorised Persons shall be, and each of them, acting alone, hereby is, in the name and on behalf of each Company, authorised, directed and empowered to seek entry of an order or orders authorising entry into any DIP Financing Documents and consummation of the DIP Facility contemplated thereby, all substantially in accordance with the documents presented to the Board and/or filed with the Bankruptcy Court, subject to such modifications thereto as the Board may deem necessary or advisable (the approval of which to be conclusively established by the execution thereof by an Authorised Person).

**5. GENERAL**

5.1. In addition to the specific authorisations conferred upon the Authorised Persons by the foregoing Resolutions, each Authorised Person (and their designees and delegates), acting alone or in any combination, shall be, and hereby is, authorised and empowered in the name of and on behalf of each Company, to take or cause to be taken any and all such other and further action to: execute, acknowledge, deliver and file any and all such agreements, deeds, certificates, notices, instruments and other documents; and pay all fees, expenses, premiums and other amounts, including but not limited to filing fees and the fees and expenses of legal counsel, accountants, financial advisors,

restructuring advisors or other professionals, in each case as in such Authorised Person's or Authorised Persons' judgment, shall be necessary, advisable, or desirable to fully carry out the intent and accomplish the purposes of the Resolutions;

5.2. The Executive Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing Resolutions, as may be required by the organisational documents of Air Baltic, or hereby waives any right to have received such notice;

5.3. All acts, actions and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and on behalf of each Company, which acts would have been approved by the foregoing Resolutions except that such acts were taken before the adoption of these Resolutions, are hereby in all respects approved, confirmed and ratified as the true acts and deeds of each Company with the same force and effect as if each such act, transaction, agreement or certificate had been specifically authorised in advance by resolution of the Board;

5.4. Each Authorised Person (and their designees and delegates), acting alone or in any combination, shall be, and hereby is, authorised and empowered to take all actions or to not take any action in the name of each Company with respect to the transactions contemplated by the foregoing Resolutions, as such Authorised Person shall deem necessary or desirable in such Authorised Person's reasonable judgment to effectuate the purposes of the transactions contemplated in these Resolutions;

5.5. Each Authorised Person, individually, shall be, and hereby is, authorised, empowered and directed in the name of each Company, to take all action to notify, or to obtain any authorisations, consents, waivers, or approvals of, any third party that such Authorised Person deems necessary, appropriate, or advisable in connection with the Chapter 11 Cases; and

5.6. Each Authorised Person shall be, and each of them hereby is, authorised to take all steps necessary to do all such acts and things, agree and execute all such other documents and dispatch all notices as may be required in order to implement the transactions contemplated by the Documents and any Related Documents, in each case in such manner or form as that person may in his or her absolute discretion think fit.

Grounds for Resolution

1. Article 301 of the Commercial Law provides:

   (1) The Board is the executive institution of a company, which manages and represents the company.

   (2) The Board shall supervise and manage the affairs of a company. It shall be responsible for the commercial activities of the company, as well as for accounting, in compliance with law.

   (3) The Board shall manage the property of the company and shall act with its means according to the requirements of law, the articles of association, and decisions of the meetings of stockholders.

2. Article 1.1 of the Board Regulations provides: The Executive Board acts as the Company's executive body, responsible for managing daily business operations and representing the Company.

3. Article 6.5.8 of the Articles of Association defines that the Board shall obtain prior approval from the Supervisory Board in deciding on conclusion, amendment or termination of significant transactions the value of which for the Company exceeds EUR 1.000.000 (one million Euro) within the framework of the financial year. Article 6.5.11 of the Articles of Association defines that the Board shall obtain prior approval from the Supervisory Board in deciding on

conclusion of pledge agreements or establishment of other encumbrances of the Company's property or a part thereof.

4. Pursuant to Section 271 of the Commercial Law, where the Company has limited solvency, insolvency indicators exist or are likely to arise, or losses amount to at least half of the share capital, the Executive Board must then inform the Supervisory Board and convene a Shareholders' Meeting. The Shareholders' Meeting decides on filing for Latvian legal protection or insolvency proceedings, liquidation, reorganisation, changes to the share capital, or another decision to improve the company's financial position.

Signed by:
Erno Hildén
C1D5B6DBC1E8473...

**Erno Kalle Ilari Hildén**
Chairman of the Executive Board

Signed by:
Vitolds Jakovļevs
9CC181D654C5449...

**Vitolds Jakovļevs**
Member of the Executive Board