**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AIR BALTIC CORPORATION AS, *et al.*,[1] | ) | Case No. 26-12188 (LGB) |
| Debtors. | ) | (Joint Administration Requested) |

**INTERIM ORDER, PURSUANT TO
11 U.S.C. §§ 105, 361, 362, 363, 364, 365, 503, 506(C) AND
507 AND BANKRUPTCY RULE 2002, 4001, 6003, 6004, AND 9014,
(A) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED
SUPERPRIORITY POSTPETITION FINANCING, (B) GRANTING
SENIOR LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (C) MODIFYING THE AUTOMATIC
STAY, (D) AUTHORIZING REPAYMENT OF INDEBTEDNESS ON, AND
TRANSFER OF OWNERSHIP TO DEBTOR OF, AIRCRAFT COLLATERAL
AND OTHER ASSETS SECURING EDC/AXIOM FINANCE LEASES THAT
ARE BEING PLEDGED AS PART OF INITIAL TRANCHE 1 DIP COLLATERAL,
(F) SCHEDULING A FINAL HEARING, AND (H) GRANTING RELATED RELIEF**

Upon the motion, dated September 14, 2026 [ECF No. 20] (the "DIP Credit Facility Motion"),[2] of the above referenced debtors and debtors-in-possession in these Chapter 11 cases (collectively, the "Debtors" and each a "Debtor"): (a) the Debtor Air Baltic Corporation AS, as borrower (the "Borrower"), and (b) the Debtors Air Baltic Training, SIA and Baltijas Kravu Centrs SIA, as guarantors (collectively, the "Guarantors", and along with the Borrower, the "Loan Parties"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e), 365, 506(c) and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and the Local Rules, seeking entry of this interim order (the "Interim Order") *inter alia*:

(i) authorizing Debtor Air Baltic Corporation AS, as the Borrower, and Debtors Air Baltic Training, SIA and Baltijas Kravu Centrs SIA, as the Guarantors, to obtain the

---

[1] The Debtors in these Chapter 11 Cases are: Air Baltic Corporation AS, Air Baltic Training, SIA, and Baltijas Kravu Centrs SIA. The Debtors' service address is Tehnikas Street 3, Lidosta "Riga", Mārupe Parish, Mārupe District, LV-1053, Latvia.

[2] Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in the DIP Term Sheet.

postpetition, superpriority, senior secured, priming debtor-in-possession financing facility (the "DIP Credit Facility") subject to the terms and conditions set forth in that certain *Senior Secured Superpriority Debtor in Possession Credit Facility Term Sheet*, as annexed hereto as **Exhibit A** (as such may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "DIP Term Sheet"),[3][4] which provides for:

a. ***Tranche 1 DIP Loans***: subject to the satisfaction of the conditions described under the heading "Conditions Precedent to Tranche 1 Closing" in the DIP Term Sheet, which includes, *inter alia,* satisfaction of the Tranche 1 Milestones (as defined in the DIP Term Sheet), with Tranche 1 DIP Loans in an aggregate amount of €175,000,000 DIP Loans (the "Tranche 1 DIP Loans") as follows: (i) an initial sub-tranche of €140,000,000 or such other amount of the Tranche 1 DIP Loans as authorized under the terms of this Interim Order (the "Initial Tranche 1 DIP Loans") and (ii) with the remainder of the Tranche 1 DIP Loans, upon the satisfaction of the conditions as provided under the DIP Term Sheet, being made available upon entry of the Final Order (as defined below) (such portion of the Tranche 1 DIP Loans, the "Remainder Tranche 1 DIP Loans");

b. ***Tranche 2 DIP Loans***: subject to the satisfaction of the conditions described under the heading "Conditions Precedent to Tranche 2 Closing" in the DIP Term Sheet, which includes, *inter alia,* the entry of the Final Order and satisfaction of the Tranche 2 Milestones (as defined in the DIP Term Sheet), additional DIP Loans in an aggregate amount of up to €125,000,000 (the "Tranche 2 DIP Loans"); and

c. ***Tranche 3 DIP Loans***: subject to the satisfaction of the conditions described under the heading "Conditions Precedent to Tranche 3 Closing" in the DIP Term Sheet, which includes the entry of the Final Order and satisfaction of the other Tranche 3 Milestones (as defined in the DIP Term Sheet), additional DIP Loans in an aggregate amount of up to €50,000,000 of DIP Loans (the "Tranche 3 DIP Loans", and along with the Tranche 1 DIP Loans and the Tranche 2 DIP Loans, the "DIP Loans");

[3] The DIP Term Sheet, along with this Interim Order, the DIP Commitment Letter (which DIP Commitment Letter annexes and incorporates therein a short form term sheet and other schedules and exhibits annexed thereto) and, upon their execution, the DIP Credit Agreement (the "***DIP Credit Agreement***") and the other DIP Facility Documents (each as defined in the DIP Term Sheet), are collectively referred to herein as the "***DIP Credit Documentation***".

[4] Until the DIP Lenders affect the assignment of any funded DIP Loans from the Fronting Lender under the terms of the Commitment Letter, DIP Lenders also include the Fronting Lender. For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Fronting Lender, by acting in such capacity, does not make any commitments, undertake any obligations, or waive any rights, including whether to take or not take any action or to exercise or seek to exercise any rights or remedies, in each case in connection with any other claims or interests it may hold against any of the Debtors.

in each case, subject to the terms of the DIP Term Sheet and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation;

(ii) approving the terms of, and authorizing the Debtors to perform all obligations under, the DIP Term Sheet and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation, and to perform all such other and further acts as may be required, necessary, or desirable in connection with the effectuation of the transactions contemplated under the DIP Term Sheet and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation;

(iii) authorizing the Borrower (a) to use a portion of the proceeds from the Initial Tranche 1 DIP Loans to, in accordance with the terms of the Finance Leases and related finance documents, indefeasibly repay and satisfy in full the obligations (including all fees, costs and expenses whatsoever payable in respect of such repayment) owed, directly or indirectly, to Export Development Canada and/or Axiom Baltic Services Ltd. under or in connection with the finance leases (collectively, the "EDC/Axiom Finance Leases" and such obligations, the "EDC/Axiom Finance Lease Obligations") under which the Aircraft Collateral and other assets (including, for the avoidance of doubt, the Export Development Canada flight simulator) securing such EDC/Axiom Finance Lease Obligations are currently pledged as collateral (all such pledged assets (including the Aircraft Collateral) are collectively referred to herein as the "Finance Lease Collateral"), and thereby release and discharge all liens, encumbrances and rights granted in connection with such EDC/Axiom Finance Leases and the EDC/Axiom Finance Lease Obligations, (b) to effect the transfer of the Finance Lease Collateral from the special purpose entities that currently hold such Finance Collateral to the Borrower and (c) to grant first priority liens on all such Finance Lease Collateral to the DIP Agent as a portion of the Initial Tranche 1 DIP Collateral, subject to Permitted Liens (as defined in the DIP Term Sheet), and (d) to effectuate any other transactions or matters contemplated under the DIP Term Sheets or related to the foregoing to ensure that the Borrower has granted a first priority security interest free and clear of any other liens, claims and encumbrances (other than liens (x) arising in the ordinary course of business comprising mechanics liens, liens mandatorily provided by operation of law liens securing aviation authority fees and charges, landing fees and EU ETS charges and (y) none of which shall be for obligations that are past due as of the Interim Closing Date) to the DIP Agent to secure the DIP Loans and the DIP Obligations (each as provided for under the DIP Term Sheet), other than Permitted Liens; and all of which transactions shall occur on the Interim Closing Date (as defined in the DIP Term Sheet) and shall be deemed to have occurred substantially concurrently with each other;

(iv) providing for the Guarantors to jointly and severally guarantee on a senior secured superpriority basis any borrowing for the DIP Loans and other DIP Obligations, as set forth in the DIP Term Sheet and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation;

(v) granting to the DIP Agent under this Interim Order, for the benefit of the DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected DIP Liens (as defined below) on all of the Initial Tranche 1 DIP Collateral (as defined in the DIP Term Sheet) (with respect to the Finance Lease Collateral, subject to the prior discharge of the EDC/Axiom Finance Lease Obligations), including: (A) senior secured superpriority liens on and security interests in assets of the Debtors consisting of the Initial Tranche 1 DIP Collateral (other than Property listed on Schedule 2 to the DIP Term Sheet (the "Junior Lien Collateral")); and (B) senior secured superpriority liens on and security interests in all unencumbered assets of the Debtors (including without limitation all cash and bank accounts of the Debtors); *provided* that senior secured superpriority liens on and security interests in any Avoidance Actions[5] and Avoidance Proceeds (as defined below) are not granted;[6]

(vi) authorizing the Loan Parties to execute and deliver (A) any agreements or instruments to effect, in accordance with the terms of the Finance Leases and related finance documents, the indefeasible payment in full of the EDC/Axiom Finance Leases Obligations and to discharge the EDC/Axiom Finance Lease Obligations, (B) any agreement or instruments agreement to satisfy the terms and conditions of the DIP Term Sheet, (C) any collateral perfection documents reasonably determined to be necessary or advisable by the Majority DIP Lenders and (D) all other documentation, including security agreements, trust agreements, pledge agreements, control agreements, mortgages, guarantees, promissory notes, certificates, hedging agreements, instruments, notes, financing statements, each fee letter entered into by any Debtor in connection with the DIP Credit Facility and such other documentation which may be necessary or required to implement the transactions contemplated under the DIP Credit Facility and for the parties to perform thereunder and/or that may be reasonably requested by the Majority DIP Lenders, in each case, as provided for or permitted under the DIP Term Sheet (and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation);

(vii) authorizing the Debtors to borrow the DIP Loans and utilize such the funds pursuant to the terms set forth in the DIP Term Sheet and this Interim Order (and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation);

(viii) authorizing the Debtors to incur the obligations under the Initial Tranche 1 DIP Loans and issue any notes or other evidence of such DIP Loans and to incur such obligations thereunder, and incur such other loan, advances, extensions of credit,

---

5 "***Avoidance Actions***" are any and all avoidance actions arising under section 502(d), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or similar non-Bankruptcy Code law.

6 The DIP Credit Facility Motion also seeks to grant a priming lien for the benefit of the DIP Secured Parties, subject to the entry of a Priming Order. The Debtors reserve the right to reflect changes from the provisions hereof in the forthcoming Final Order to address such priming lien matters.

financial accommodations, reimbursement obligations, fees (including, without limitation, administrative agency fees and other fees payable to the DIP Secured Parties under the DIP Term Sheet and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation, along with other costs, expenses and other liabilities, and all other obligations (including indemnities and similar obligations, whether contingent or absolute), in each case, due or payable under the DIP Term Sheet (and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation), and regardless of whether such occurred prior to or after the Petition Date (collectively, all such obligations, the "DIP Obligations") and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(ix) subject to the Carve-Out (as defined below), granting to the DIP Agent and the other DIP Secured Parties allowed superpriority administrative expense claims status in each of the Chapter 11 Cases and any Successor Cases (as defined below) pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations;

(x) authorizing the Debtors to use proceeds of the DIP Credit Facility solely in accordance with this Interim Order, the DIP Term Sheet (and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation) and the Approved Budget (subject to Permitted Variances (each as defined below));

(xi) authorizing the Debtors to pay (or, to the extent permitted under the DIP Term Sheet, pay in kind and capitalize as principal obligations) the principal, interest, fees, expenses and other DIP Obligations payable under, and in accordance with the terms of, this Interim Order, the DIP Term Sheet (and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation);

(xii) vacating and modifying the automatic stay under section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent set forth herein to the extent necessary to permit the Loan Parties and the DIP Secured Parties to implement and effectuate the terms, provisions and transaction provided for and/or contemplated under this Interim Order, the DIP Term Sheet (and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation), and to deliver any notices as may be required in connection therewith and/or with the enforcement of any terms or under the DIP Term Sheet (and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation) and as further set forth herein;

(xiii) waiving any applicable stay (including, *inter alia,* under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon its entry, the Final Order; and

(xiv) scheduling a final hearing (the "Final Hearing") to consider final approval of the DIP Credit Facility pursuant to a forthcoming proposed final order (the "Final Order"), as described in the DIP Credit Facility Motion and the DIP Term Sheet (and, upon finalization and execution thereof, the DIP Credit Agreement and the other DIP Credit Documentation) as have been or may be filed with this Court prior or in connection with the Final Hearing.

The Court having considered the interim relief requested in the DIP Credit Facility Motion, the exhibits attached thereto, the *Declaration of Vitolds Jakovlevs in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 14] (the "First Day Declaration"), the *Declaration of Stephan T. Krastev in Support of Debtors' Motion for Entry of Interim and Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Dkt. No. 21] (the "Krastev Declaration", and along with the First Day Declaration, the "Supporting Declarations"), the available DIP Credit Documentation and the evidence submitted and arguments made at the interim hearing held on September 15, 2026 (the "Interim Hearing"); and due and sufficient notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(c) and (d), 6003, 6004 and all applicable Bankruptcy Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Credit Facility Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Credit Facility Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable and in the best interests of the Debtors and their estates and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and the Court having determined that the legal and factual bases set forth in the DIP Credit Facility Motion establish just cause for the relief

granted herein; and it appearing that the Debtors' entry into the DIP Term Sheet, the DIP Credit Agreement, the other DIP Credit Documentation is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[7]

A. **Petition Date.** On September 14, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court") commencing these chapter 11 cases (the "Chapter 11 Cases"). On September 14, 2026, this Court entered an order approving the joint administration of the Chapter 11 Cases.

B. **Debtors in Possession.** The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been appointed.

C. **Jurisdiction and Venue**. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). Consideration of the DIP Credit Facility Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Sections 105, 363, 364, 503, 506, and 507 of the Bankruptcy

[7] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and the Local Rules provide the bases for the relief sought in the DIP Credit Facility Motion and granted in this Interim Order.

D. **Notice**. Notice of the Hearing and the relief requested in the DIP Credit Facility Motion has been provided by the Debtors, in accordance with and compliance with Bankruptcy Rules 2002, 4001, and 9014, as well as the Local Rules, and is due, sufficient, and appropriate notice, and complies with section 102(1) of the Bankruptcy Code. Without limiting the foregoing, due notice was afforded, whether by email, overnight courier and/or hand delivery to the Notice Parties. No other or further notice of the DIP Credit Facility Motion with respect to the relief requested at the Hearing or the entry of this Interim Order shall be required.

E. **No Control**. None of the DIP Agent or the other DIP Secured Parties are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Credit Facility, or the DIP Credit Documentation.

F. **No Claims or Causes of Action**. As of the date hereof, there exist no claims or causes of action against the DIP Agent or the other DIP Secured Parties with respect to, in connection with, related to, or arising from this Interim Order, the DIP Term Sheet, the other DIP Credit Documentation or otherwise that may be asserted by the Debtors.

G. **No Credit Available on More Favorable Terms**. As set forth in the DIP Credit Facility Motion and the DIP Declarations, the Debtors are unable to obtain: (i) financing on more favorable terms and conditions from sources other than the DIP Lenders under the DIP Credit Documentation; (ii) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense; or (iii) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the

Bankruptcy Code, and have only been able to obtain credit for money borrowed that is secured by, subject to the terms of the DIP Term Sheet, a lien on the Initial Tranche 1 DIP Collateral. The Debtors have also been unable to obtain credit for borrowed money without granting the DIP Liens (as defined below) and the DIP Superpriority Claims to (or for the benefit of) the DIP Secured Parties. Accordingly, the DIP Credit Facility is the best source of debtor in possession financing available to the Debtors.

H. **Extension of Financing**. The DIP Secured Parties have indicated a willingness to provide the DIP Credit Facility (and the DIP Loans thereunder) to the Loan Parties in accordance with this Interim Order, the other DIP Credit Documentation and the Initial 13-Week Forecast, a copy of which is attached hereto as **Exhibit B** (together with any Updated 13-Week Forecast, in each case, as may be amended in accordance with the terms of the DIP Term Sheet and this Interim Order, the "Initial Approved Budget"), and subject to (i) the entry of this Interim Order, (ii) approval and ratification of the Debtors' entry into the DIP Term Sheet, the other DIP Credit Documentation, and each of their respective terms, and (iii) findings by this Court that such financing is essential to the Debtors' estates (and the continued operation of the Debtors), that the DIP Secured Parties are good-faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens, rights, and other protections granted pursuant to and in connection with this Interim Order, the DIP Term Sheet and the other DIP Credit Documentation (including the DIP Superpriority Claims and the DIP Liens), will not be affected by any subsequent reversal, modification, vacatur, stay or amendment of, as the case may be, this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

I. **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i) The DIP Credit Facility, the DIP Term Sheet and the other DIP Credit Documentation result from a competitive process the Debtors, along with their advisors, conducted to select the best available financing under the circumstances. The DIP Credit Facility, the DIP Term Sheet and the other DIP Credit Documentation were negotiated in good faith and at arm's length among the Loan Parties and each DIP Secured Party. The terms and conditions of the DIP Credit Facility, the DIP Term Sheet and the other DIP Credit Documentation, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and consideration;

(ii) the fees, premiums, and other charges payable under the DIP Credit Documentation (including, without limitation, but without duplication, such premium, fees and other amounts as provided in, inter alia: (a) the "Premium and Fees" section of the DIP Term Sheet, (b) Schedule 1 of Exhibit A to the Commitment Letter, (c) subject to entry of the Final Order, the "Make-Whole Amount" section of the DIP Term Sheet and (d) other provisions in the DIP Credit Documentation) (collectively, the "DIP Fees") are an integral component of the DIP Credit Facility, were negotiated at arm's length, in good faith, and without collusion, were a material inducement to each DIP Secured Parties to provide and/or maintain the DIP Loans, and constitute reasonable and fair consideration for the DIP Secured Parties' agreement to extend credit and to bear the risks associated therewith; none of the DIP Fees constitute unmatured interest within the meaning of section 502(b)(2) of the Bankruptcy Code, a penalty, a forfeiture, or unenforceable liquidated damages under applicable non-bankruptcy law;

(iii) all obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order, the DIP Credit Facility, the DIP Term Sheet and the DIP Credit Documentation by any Loan Party are granted to or for the benefit of the Loan Parties for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby; and

(iv) the use of proceeds from DIP Loans made under the DIP Credit Facility that may be extended under this Interim Order, the DIP Term Sheet and the other DIP Credit Documentation are deemed to be extended by the DIP Lenders and the DIP Secured Parties in good faith and for valid business purposes and uses, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and the successors and assigns of each) are entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code whether or not this Interim Order or any provision thereof are vacated, reversed or modified, on appeal or otherwise.

J. **Finance Lease Collateral and Repayment of the EDC/Axiom Finance Leases.** As of the Petition Date, the Borrower is liable to Export Development Canada and/or Axiom Baltic Services Ltd. under the EDC/Axiom Finance Leases. The EDC/Axiom Finance Lease Obligations are secured by valid, enforceable, properly perfected, and non-avoidable security interests in and liens on all of the Finance Lease Collateral. The Debtors have material equity value in the Finance Lease Collateral. The DIP Lenders would not agree to provide the DIP Credit Facility without a first priority security interest over the Finance Lease Collateral. Accordingly, undertaking the indefeasible payoff in full of the EDC/Axiom Finance Lease Obligations associated with the Finance Lease Collateral, effecting the immediate transfers of such Finance Lease Collateral to the Borrower, and concurrently granting the DIP Secured Parties

a first priority security interest over such Finance Lease Collateral so as to be able to draw upon the Initial Tranche 1 DIP Loans, all of which are to occur substantially concurrently, constitute prudent exercises of the Debtors' business judgment, are in good faith and for valid business purposes and such actions and transactions are in the best interests of the Debtors' estates.

K. **Relief Essential; Best Interest**. The relief requested in the DIP Credit Facility Motion (and provided in this Interim Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their assets and property. Good and sufficient cause has been shown for the entry of this Interim Order and for the authorization of the Debtors to obtain financing pursuant to the DIP Credit Documentation and indefeasibly repay in full the EDC/Axiom Finance Lease Obligations. The Debtors have an immediate and critical need to obtain the relief set out herein, and will suffer immediate and irreparable harm if the interim relief is not granted. It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Credit Facility and the DIP Credit Documentation (and entry into such documents is ratified), to incur the DIP Obligations, to indefeasibly repay in full the EDC/Axiom Finance Lease Obligations, and to grant the liens, claims, rights, and other protections contemplated by this Interim Order, the DIP Credit Facility, and the DIP Credit Documentation to the DIP Secured Parties.

Based upon the foregoing findings and conclusions, the DIP Credit Facility Motion, the DIP Declarations, and the record before this Court with respect to the DIP Credit Facility Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. **Motion Granted**. The DIP Credit Facility Motion is granted in accordance with the terms and conditions set forth in this Interim Order. Any objections to the relief set forth in

this Interim Order that have not been withdrawn, waived, or settled are hereby denied and overruled.

2. **DIP Credit Facility**.

(a) **DIP Obligations**. The Debtors are expressly and immediately authorized and empowered (i) to enter into the transactions contemplated under the DIP Term Sheet and the other DIP Credit Documentation, and their entry into such agreements is hereby ratified and approved as valid and binding obligations of the Debtors, (ii) to incur the DIP Obligations in accordance with and subject to this Interim Order, the DIP Term Sheet and the other DIP Credit Documentation, (iii) to enter into, execute and/or deliver all additional DIP Credit Documentation and all other instruments, certificates, agreements and documents contemplated thereby or hereby, and (iv) to take all actions, which may be required, otherwise necessary or deemed reasonable by the DIP Agent and/or the DIP Arranger for the performance by the Loan Parties under the DIP Term Sheet and the other DIP Credit Documentation and the creation and perfection of the DIP Liens described and provided for herein and therein. The Loan Parties are hereby authorized to pay, without further court order, all principal, interest, fees, costs and expenses, indemnities and other amounts described herein, in the DIP Term Sheet and in the other DIP Credit Documentation (including the DIP Obligations) as such shall accrue and become due hereunder or thereunder. Such fees and expenses incurred by the DIP Secured Parties include, *inter alia,* pre-petition fees and expenses arising in connection with the negotiation, drafting and implementation of the DIP Credit Facility, which the Loan Parties agreed to pay under the DIP Term Sheet and other DIP Credit Documentation and the Loan Parties are hereby authorized to pay such, without further court order. The DIP Credit Documentation and all DIP Obligations represent, constitute and evidence, as the case may be, valid and binding, joint and several, obligations of the Loan Parties,

enforceable against the Loan Parties, their estates and any successors thereto in accordance with their terms. All obligations incurred, payments made, rights granted, and transfers or grants of security set forth in this Interim Order, the DIP Term Sheet or the other DIP Credit Documentation by any Loan Party are for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby. The obligations and guarantees incurred or made, payments made, transfers or grants of security as set forth in the DIP Credit Documentation by any Loan Party as approved under this Interim Order shall not be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any challenge, rejection, reduction, subordination, defense, recharacterization, avoidance, reduction, setoff, recoupment or counterclaim or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law.

(b) **Authorization to Borrow**. Pursuant to this Interim Order, the Borrower is hereby authorized to borrow under the DIP Credit Facility, and the Guarantors are authorized to guarantee, on a joint and several basis, repayment of such DIP Obligations in respect of the DIP Credit Facility, up to an aggregate principal amount of €140,000,000 in DIP Loans (plus interest, fees, indemnities, and other expenses and other amounts provided for in the DIP Term Sheet) in accordance with this Interim Order, the DIP Term Sheet, the Approved Budgets and the other DIP Credit Documentation.

(c) **Intercompany Loans**. The Loan Parties are authorized to advance funds, including DIP Loan proceeds, amongst the Loan Parties and with affiliates thereof in accordance with the Approved Budget, the DIP Term Sheet and the other DIP Credit Documentation. Until the DIP Obligations have been indefeasibly paid in full (other than contingent indemnification

obligations for which no claim has been asserted) and the DIP Commitments have been terminated, any intercompany obligations owed by any of the Debtors shall be collaterally assigned to the DIP Agent for the benefit of the DIP Secured Parties in accordance with the terms of the DIP Credit Documentation.

(d) **DIP Liens**. Subject to the concurrent extension of the Initial Tranche 1 DIP Loans and, in accordance with the terms of the Finance Leases and related finance documents, the indefeasible payoff in full of the EDC/Axiom Finance Lease Obligations, effective as of Closing Date, and subject only to the Carve-Out (and, pending entry of the Priming Order, the Permitted Liens (as defined in the DIP Term Sheet), if any) the DIP Agent, for the benefit of the DIP Secured Parties and to secure the DIP Obligations, is granted, without the necessity of the execution, recordation of filings by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents or instruments, or the possession or control by the DIP Agent or any DIP Lender of, or over, any collateral, the following security interests and liens (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Agent and the other DIP Secured Parties, pursuant to this Interim Order and the other DIP Credit Documentation, collectively, the "DIP Liens" and the property subject to the DIP Liens, the "DIP Collateral"); *provided* that, for the avoidance of doubt, "DIP Collateral" shall include all "DIP Collateral" as defined in the DIP Term Sheet, but subject to any limitations as provided in the DIP Term Sheet with respect to the Final Order DIP Collateral; *provided*, *further*, that, notwithstanding anything to the contrary contained herein, all rights of credit card processors under the Credit Card Arrangements (as defined in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain their Existing Customer Programs and Honor Prepetition Customer Obligations Related Thereto; (II) Modifying the Automatic Stay; and*

*(III) Granting Related Relief* [Dkt. No. 8] (the "Customer Programs Motion" and any order Bankruptcy Court approving the Customer Programs Motion, the "Customer Programs Order") and the Customer Programs Order are hereby preserved and shall not be impaired in any way by this Interim Order, by the DIP Liens or by the DIP Credit Documentation, and amounts held back by credit card processors in connection with credit card processing services provided to the Debtors and in accordance with the Credit Card Arrangements and the Customer Programs Order related to such services shall not be subject to the DIP Liens unless and until such amounts are paid to the Debtors in accordance with the terms of the applicable agreements:

i. **Section 364(c)(2) DIP Liens**. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, enforceable, non-avoidable, continuing and automatically and fully-perfected first priority senior security interest in and lien on all prepetition and postpetition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Closing Date (or upon any date thereafter upon which such DIP Collateral) is not subject to valid, perfected, and non-avoidable liens (or perfected after the Closing Date to the extent permitted by section 546(b) of the Bankruptcy Code), including, without limitation, any unencumbered cash of the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash, accounts, inventory, goods, contract rights, mineral rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, intercompany claims, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, vehicles, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Loan Party, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, beneficial interests in any trust, money, investment property, causes of action (but excluding Avoidance Actions and Avoidance Actions Proceeds (as defined below)) and all cash and non-cash proceeds, rents, products, substitutions, accessions, profits and supporting obligations of any of the collateral described above, whether in existence on the Petition Date or thereafter created, acquired or arising and wherever located. Under this Interim Order, the valid, binding, enforceable, non-avoidable, continuing and automatically and fully-perfected first priority senior

security interest in and lien on property provided under this subparagraph (i) shall cover all of the Initial Tranche 1 DIP Collateral other than the Junior Lien Collateral; provided further that the grant of such liens over the Aircraft Collateral and the other Finance Lease Collateral is subject to the concurrent indefeasible payoff in full of the EDC/Axiom Finance Lease Obligations and the grant of such liens under this subparagraph (i). Additionally, the Debtors will seek permission to grant, at the Final Hearing or in connection with the Final Order, DIP Liens over Debtors' property including any such Avoidance Actions and property received or recovered thereby (collectively, the "Avoidance Action Proceeds).

ii. **Section 364(c)(3) DIP Liens**. Solely with respect to the Junior Lien Collateral, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected second priority security interest in and lien on all such prepetition and postpetition Property of the Loan Parties, whether now existing or hereafter acquired, and solely junior to the liens existing on such Property as of the Petition Date.

DIP Liens shall not be subject to challenge including under sections 510, 546, 549 or 550 of the Bankruptcy Code. The DIP Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such Chapter 11 Cases or proceedings, "Successor Cases"), or upon the dismissal of any of the Chapter 11 Cases. Notwithstanding anything herein or in any of the other DIP Credit Documentation to the contrary, no DIP Liens shall be granted over any Property over which liens cannot be provided under the terms of the Cape Town Protocol and the Cape Town Convention, but the DIP Liens shall apply to any proceeds thereof, including as a result of the sale or any other disposition thereof.

(e) **DIP Fees**. The DIP Fees are hereby approved in all respects and are deemed fully earned, non-refundable, irrevocable, and non-avoidable as of the dates provided in the DIP Term Sheet and the other DIP Credit Documentation, and shall be paid without further application to, notice to, or order of this Court. No DIP Fee shall constitute or be deemed to constitute unmatured interest, a penalty, or unenforceable liquidated damages, and no DIP Fee shall be

subject to reduction, recharacterization, disgorgement, avoidance, offset, recoupment, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, or surcharge on any theory.

3. **DIP Superpriority Claims**. Effective as of the date of the entry of this Interim Order, in each case subject to the Carve-Out (and, pending entry of the Priming Order, the Permitted Liens), the DIP Agent, for the benefit of the DIP Secured Parties, is granted pursuant to section 364(c)(1) of the Bankruptcy Code, and effective upon entry of this Interim Order, allowed superpriority administrative expense claims for all of the DIP Obligations against the Debtors in each of the Chapter 11 Cases and any Successor Cases on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims, including those arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including any adequate protection obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "DIP Superpriority Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims for all of the DIP Obligations shall be payable from and have recourse to all prepetition and postpetition Property of the Debtors and all proceeds thereof (excluding Avoidance Actions and Avoidance Action Proceeds) in accordance with the DIP Term Sheet, the other DIP Credit Documentation and this Interim Order, and subject only the Carve-Out

and, pending entry of the Priming Order, the Permitted Liens (as defined in the DIP Term Sheet). The DIP Superpriority Claims for all DIP Obligations shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. The DIP Superpriority Claims of each DIP Lender shall be *pari passu* in right of payment with one another, and all DIP Superpriority Claims shall be senior to any adequate protection obligations. No other superpriority claims equal or senior to the DIP Superpriority Claims shall be granted or allowed in these Chapter 11 Cases, and the Debtors will not seek any other postpetition debtor-in-possession financing other than under the DIP Credit Facility approved hereunder, except as otherwise expressly permitted by the DIP Term Sheet or the other DIP Credit Documentation (for example, by all DIP Obligations (as defined in the DIP Term Sheet) having been fully and indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted)) or otherwise with the prior written consent of the Majority DIP Lenders.

4. **Authorization and Approval to Use Proceeds of DIP Loans**. Subject to the terms and conditions and in compliance with this Interim Order, the Approved Budgets (subject to the terms and variances (including the Permitted Variances) provided for under the DIP Term Sheet, and the other DIP Credit Documentation), the Loan Parties are each authorized to use proceeds of the DIP Loans. No DIP Secured Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP Loans, and each DIP Secured Party may rely upon each Debtor's representations that the amount of the DIP Loans or other credit extensions under the DIP Credit Facility requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order, the Approved Budgets (subject to the terms and variances provided for under the DIP Term Sheet) and the other DIP Credit Documentation.

5. **Authorization and Approval to Use Proceeds of DIP Loans to Repay in Full the EDC/Axiom Finance Lease Obligations, to Transfer the Finance Lease Collateral to the Borrower and Grant DIP Liens Thereon to the DIP Agent.** In order to effectuate the transactions, funding and grant of DIP Liens to the DIP Secured Parties on the Closing Date as contemplated under this Interim Order, the DIP Term Sheet and the other DIP Credit Documentation, the Borrower is hereby authorized and empowered, pursuant to sections 363 and 105 of the Bankruptcy Code: (a) to, in accordance with the terms of the Finance Leases and related finance documents, effect the indefeasible payoff in full of the EDC/Axiom Finance Lease Obligations and to negotiate, execute, deliver, and enter into and perform under such documents, agreements, instruments, or papers as shall be necessary or appropriate to reflect and constitute such payoff, (b) concurrently with and subject to effecting such payoff, to effect the immediate transfers of such Finance Lease Collateral, including, inter alia, the Aircraft Collateral, to the Borrower, (c) concurrently with and subject to effecting the actions and transactions set forth in clauses (a) and (b) above, to grant to the DIP Agent, for the benefit of the DIP Secured Parties, the senior secured priming superpriority liens on all of the Finance Lease Collateral, including, without limitation, the Aircraft Collateral (and shall also concurrently provide senior secured, first priority priming superpriority liens on all of the other Initial Tranche 1 DIP Collateral (other than the Junior Lien Collateral, which shall be subjected to a second priority lien in favor of the DIP Agent for the benefit of the DIP Secured Parties) to the DIP Agent (for the benefit of the DIP Secured Parties), and (d) to take such further steps as may be desirable or reasonably necessary to collateralize the value of the Aircraft Collateral and the other Finance Lease Collateral in favor of the DIP Secured Parties; provided that all of which transactions and actions as described in the foregoing clauses (a), (b) and (c) shall be deemed to occur simultaneously on the Closing Date.

The indefeasible payoff in full of the EDC/Axiom Finance Lease Obligations shall be irrevocably binding on the Debtors and any and all of the Debtors' successors-in-interest and assigns and all creditors and other parties-in-interest and all of their respective successors and assigns, including, without limitation, any statutory or non-statutory committees appointed or formed in these chapter 11 cases, including the Creditors' Committee and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes. For the avoidance of doubt, the entry of this Interim Order shall constitute final approval of the indefeasible payoff in full of the EDC/Axiom Finance Lease Obligations, such payoff shall not be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any challenge, rejection, reduction, subordination, defense, recharacterization, avoidance, reduction, setoff, recoupment or counterclaim or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law, and no modification, amendment, waiver or vacatur of this Interim Order shall affect the validity and enforceability thereof. No payment or transfer made by or on behalf of the Debtors to Export Development Canada or Axiom Baltic Services Ltd. on account of the Finance Leases and/or Financed Equipment (as defined in the DIP Credit Facility Motion and which, for avoidance of doubt, includes the Export Development Canada financed simulator) pursuant to this Order, the DIP Term Sheet and the DIP Credit Agreement shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or any applicable law or subject to any contest, attack, rejection, defense, avoidance, reduction, setoff, recoupment, recharacterization, or subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code, any other order of the Court or applicable law, or regulation by any person or entity.

6. **Automatic DIP Lien Perfection**. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the respective DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein and the other DIP Credit Documentation. Notwithstanding the foregoing, the DIP Agent (directly or via a designee) may, as directed by the DIP Arranger or the Majority DIP Lenders, but in all cases subject to the terms of the DIP Credit Documentation, in either's sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens international registrations and other similar documents or instruments, and the automatic stay set forth in section 362 of the Bankruptcy Code does not apply or prohibit any of the actions set forth in this paragraph 6, and all such financing statements, deeds of trust, mortgages, security agreements, notices, international registration filings and other agreements or documents or instruments shall be deemed to have been filed or recorded at the time and on the Petition Date. Subject in all instances to the terms of the DIP Term Sheet and the other DIP Credit Documentation, the Loan Parties shall execute and deliver to the DIP Agent all such financing statements, mortgages, security agreements, notices and other documents or instruments, and otherwise cooperate and assist in any such filings, as the DIP Agent, the DIP Arranger or the Majority DIP Lenders may reasonably request to evidence, confirm, validate or perfect, or to ensure the contemplated priority of, the DIP Liens. The DIP Agent (directly or via a designee), as directed by the DIP Arranger or the Majority DIP Lenders, in either's sole discretion, may (in all instances subject to the terms of the DIP Credit Documentation) file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements

or with any registry of deeds or similar office in any jurisdiction in which any Loan Party has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. The DIP Agent, the DIP Arranger or the Majority DIP Lenders (in all instances subject to the terms of the DIP Credit Documentation) may require the Loan Parties to enter into U.S. or non-U.S. security documentation (including New York aircraft mortgages, Latvian commercial pledges or other instruments or agreements), in all instances on or following the Interim Closing Date, with respect to such DIP Collateral owned by any of the Loan Parties or located in non-U.S. jurisdictions and each Loan Party and its respective officers and the DIP Agent (directly or via a designee) are authorized to execute, file and record any documents or instruments as the DIP Agent, the DIP Arranger or the Majority DIP Lenders shall request, subject in all instances to the terms of the DIP Term Sheet and the other DIP Credit Documentation, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

7. Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold or contractual interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code and shall have no force and effect with respect to the grant of post-petition liens in such leasehold or contractual interest or the proceeds of any assignment and/or sale thereof by the Debtors, in favor of the DIP Secured Parties in accordance with the terms of this Interim Order or the other DIP Credit Documentation.

8. [Reserved]

9. **Carve-Out**. As used in this Interim Order and the other DIP Credit Documentation, the "***Carve-Out***" shall be comprised of the following components:

(a) **Clerk and U.S. Trustee Fees**. All fees required to be paid to the Clerk of this Court and U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code (collectively, "Clerk and UST Fees").

(b) **Chapter 7 Trustee Fees**. All reasonable fees and expenses up to $75,000.00 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee Fee Cap").

(c) **Allowed Professional Fees**. To the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all accrued and unpaid fees and expenses (the "Professional Fees", and upon allowance by this Court, the "Allowed Professional Fees") of persons or firms retained (or proposed to be retained) by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code and any persons or firms retained (or proposed to be retained) by the official creditors' committee (if any)[8] pursuant to section 328 or 1103 of the Bankruptcy Code (such persons or firms, the "Professional Persons") incurred by the Professional Persons (i) at any time before the date of the delivery of the Carve-Out Trigger Notice, and without regard to whether such fees and expenses are provided for in the Initial Approved Budget, and (ii) at any time after the date of delivery of the Carve-Out Trigger Notice in an aggregate amount not exceeding €6,000,000.00 (the "Post-Trigger-Notice Carve-Out Fee Cap"). The Post-Trigger-Notice Carve-Out Fee Cap shall not be reduced or increased by the amount of any compensation or reimbursement of expenses paid prior to the occurrence of an Event of Default in respect of which

[8] Any official committee of unsecured creditors appointed in these Chapter 11 Cases is referred to herein as the "Creditors' Committee".

the Carve-Out is invoked. For purposes of the Carve-Out, Allowed Professional Fees shall exclude any restructuring, sale, consummation, success, or similar fee of any Professional Person; *provided* that, for purposes of the Carve-Out, Allowed Professional Fees shall include, if and as payable to Seabury Securities LLC or its affiliates ("Seabury"), as the case may be, in accordance with the terms of each of their respective engagement letters, to the extent such engagement letter and/or applicable fee set forth therein is approved by this Court (for the avoidance of doubt, including any restructuring, sale, consummation, success, financing, or similar fee of Seabury).

(d) **Carve-Out Trigger Notice**. For purposes of this Interim Order, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (at the direction of the Majority DIP Lenders) to the Debtors, the Debtors' lead restructuring counsel (Milbank LLP), the U.S. Trustee, and lead counsel to the Creditors' Committee, which notice (i) may be delivered only upon the occurrence and during the continuation of an Event of Default (as defined below and subject to any applicable grace periods, waivers, or forbearances) and acceleration of the DIP Obligations under the DIP Term Sheet or the other DIP Credit Documentation and (ii) shall expressly state that the Carve-Out is triggered and the Post-Trigger-Notice Carve-Out Fee Cap has been invoked.

(e) **Fee Reserve Account Funding After a Carve-Out Trigger Notice**. On the day on which a Carve-Out Trigger Notice is received by the Debtors (with a copy to lead counsel to the Creditors' Committee), the Carve-Out Trigger Notice shall constitute a demand to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to transfer to a fee reserve account cash in an amount equal to all remaining unfunded portions of the Carve-Out as provided herein to be held in trust to pay Allowed Professional Fees. Following delivery of a Carve-Out Trigger Notice and the transfer set forth in the prior sentence, the DIP

Agent shall deposit into such fee reserve account any cash swept or foreclosed upon (including cash received as a result of the sale or other disposition of any assets) until such fee reserve account has been fully funded in an amount equal to all remaining unfunded portions of the Carve-Out as provided herein. Notwithstanding anything to the contrary in the DIP Credit Documentation or this Interim Order, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Loan Parties until such fee reserve account has been fully funded in an amount equal to the Carve-Out. Further, notwithstanding anything to the contrary herein, (i) disbursements by the Debtors from such fee reserve account shall not constitute DIP Loans, (ii) the failure of the fee reserve account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Carve-Out, fee reserve account, or Initial Approved Budget or any of the foregoing be construed as a cap on the amount of the Professional Fees due and payable by the Debtors or that may be allowed by this Court at any time (whether by interim order, final order, or otherwise).

(f) To the extent such cash on hand is not sufficient to fully fund the fee reserve account, the Carve-Out Trigger Notice shall be deemed to constitute a draw request by the Borrower to the DIP Agent under the DIP Credit Documentation for DIP Loans (on a pro rata basis based on the then outstanding DIP Commitments) to fully fund the fee reserve account, following delivery of the Carve-Out Trigger Notice to the Debtors, notwithstanding anything in the DIP Credit Documentation to the contrary, including with respect to the existence of any default or Event of Default, or any termination of the DIP Commitments thereunder following an Event of Default. Any such funding of the fee reserve account shall be added to, and made part of, the DIP Obligations secured by the DIP Collateral and shall otherwise be entitled to the protections granted

under this Interim Order, the other DIP Credit Documentation, the Bankruptcy Code, and applicable non-bankruptcy law. Funds transferred to such fee reserve account shall not (i) be subject to the DIP Liens, the DIP Superpriority Claims, or any claim, liens or security interests granted to any other party, (ii) constitute DIP Collateral or (iii) constitute cash collateral; *provided* that the DIP Agent (on behalf of the DIP Secured Parties) shall have a reversionary interest in the funds held in such fee reserve account, if any, after all amounts included in the Carve-Out, including any Allowed Professional Fees, have been indefeasibly paid in full pursuant to a final order of this Court (regardless of when such Professional Fees are allowed by this Court) (the "Reversionary Interest") and, to the extent such funds remain, such funds shall be paid to the DIP Agent for the benefit of the DIP Secured Parties, unless the DIP Obligations have been indefeasibly paid in full (other than contingent indemnification obligations for which no claim has been asserted) and all DIP Commitments terminated. All funds in such fee reserve account shall be used to pay the obligations set forth in the definition of the Carve-Out until such obligations are paid in full. All payments and reimbursements made from such fee reserve account after the delivery of a Carve-Out Trigger Notice shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(g) **Priority of Carve-Out**. The Carve-Out shall be senior to the DIP Liens and the DIP Superpriority Claims. Notwithstanding anything to the contrary contained in this Interim Order or any DIP Credit Documentation, the security interests, Liens and claims granted to any of the DIP Secured Parties (including, without limitation, the DIP Liens and DIP Superpriority Claims) under, pursuant to or in connection with the DIP Credit Facility, any DIP Credit Documentation, or this Interim Order, as applicable, shall be subject to payment in full in cash of the amounts due under the Carve-Out.

(h) Notwithstanding the foregoing, so long as a Carve-Out Trigger Notice has not been delivered in accordance with this Interim Order: (i) the Debtors shall be permitted to pay Professional Fees, as the same may become due and payable, including on an interim basis, solely in accordance with orders of this Court, and (ii) such payments shall not reduce, or be deemed to reduce, the Post-Trigger-Notice Carve-Out Fee Cap.

(i) None of the DIP Agent or the DIP Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any Successor Cases. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent or the DIP Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

10. **Aircraft Lease Matters**. Other than with respect to the Aircraft Collateral and the other Finance Lease Collateral (which, subject to the terms and provisions of the DIP Term Sheet and other DIP Credit Documentation, shall constitute DIP Collateral), the DIP Collateral shall not include any of the Debtors' (i) other leasehold interests in equipment (aircraft, engines, flight simulators, or other equipment) leases or equipment leased thereunder or (ii) equipment subject to financing arrangements (whether through secured loans, finance leases or otherwise) and interests in the underlying financing agreements, in each case solely to the extent that both (y) the relevant lease or financing agreement prohibits or conditions the grant of a lien or assignment of a lease or other financing agreement upon the consent of a non-Debtor counterparty to the extent such consent is not actually obtained and (z) the grant of liens over such Property cannot be provided pursuant to the terms of the Cape Town Protocol and the Cape

Town Convention; provided, however, that the DIP Liens shall apply to and cover any sale proceeds and/or other proceeds arising from such Property.

11. **[Reserved]**.

12. **Events of Default; Rights and Remedies Upon Event of Default**.

(a) The occurrence of any "Event of Default" under (and as defined in) the DIP Term Sheet or any other DIP Credit Documentation shall constitute a "DIP Event of Default" under this Interim Order.

(b) The Automatic Stay is hereby modified to the extent necessary to permit the DIP Agent (acting at the direction of the Majority DIP Lenders) to take any or all of the following actions, at the same time or different times, in each case without further order or application of the Court and immediately upon the occurrence of a DIP Event of Default: (i) deliver a notice of a DIP Event of Default to the Debtors, the Creditors Committee, and the U.S. Trustee (provided that such notice must be provided to each); (ii) declare the termination, reduction or restriction of any further DIP Commitments to the extent any such DIP Commitments remain; and (iii) declare all applicable DIP Obligations to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the DIP Obligors; *provided* that such declaration shall be subject to the Carve-Out as provided above and effective five (5) business days following delivery of a notice of a DIP Event of Default by the DIP Agent to the Debtors (and their lead restructuring counsel) (the "Remedies Notice Period") (any such declaration of the foregoing (i) through (iii), a "Termination Declaration" and the date of such Termination Declaration, the "Termination Declaration Date").

(c) The Termination Declaration shall be given by electronic mail (or other electronic means) to the Debtors (and their lead Chapter 11 counsel), counsel to any Creditors

Committee (if appointed), and to the U.S. Trustee. The Automatic Stay otherwise applicable to the DIP Agent and the other DIP Secured Parties is hereby modified so that, following the Remedies Notice Period: the DIP Agent (acting at the direction of the Majority DIP Lenders) shall be authorized and entitled, without further notice to the Debtors or any other interested party but subject to and in accordance with the terms of the DIP Term Sheet and the other DIP Credit Documentation, exercise its rights and remedies in accordance with the DIP Term Sheet and the other DIP Credit Documentation and this Interim Order (including, without limitation, to declare all DIP Obligations immediately due and payable and charge default interest under the DIP Term Sheet and the other DIP Credit Documentation) and shall be permitted to satisfy the relevant DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to and consistent with (i) the Carve-Out, (ii) this Interim Order, and (iii) the DIP Term Sheet and the other DIP Credit Documentation; *provided that*, notwithstanding the foregoing or anything to the contrary in the DIP Credit Documentation, the DIP Secured Parties shall not be permitted to compel the Debtor to sell any of its assets pursuant to section 363(b) of the Bankruptcy Code or any other applicable law absent Bankruptcy Court approval.

(d) Following expiration of the Remedies Notice Period, whether or not the maturity of any of the DIP Obligations shall have been accelerated, the Automatic Stay imposed under section 105 or section 362(a) of the Bankruptcy Code or otherwise will automatically be terminated with respect to the DIP Agent and the DIP Secured Parties who shall be permitted to proceed to protect, enforce and exercise all other rights and remedies provided for in the DIP Credit Documentation and under applicable law, including, but not limited to, by (i) immediately terminating and/or revoking the Debtors' right under this Interim Order and any other DIP Credit Documentation, as applicable, to use any cash collateral or proceeds of the DIP Credit Facility

Financing (except for the Carve-Out or toward satisfaction of the DIP Obligations as provided in this Interim Order and the applicable DIP Credit Documentation), (ii) bringing any action at law or other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in any such DIP Credit Documentation or any instrument pursuant to which such DIP Obligations are evidenced, (iii) foreclosing and tasking any other enforcement action on all of or any portion of the DIP Collateral including freezing any cash collateral held in the Debtors' accounts, (iv) immediately setting-off any and all amounts in accounts maintained by the Debtors against the DIP Obligations, or otherwise enforcing any and all rights against any DIP Collateral in the possession of the DIP Agent or the other DIP Secured Parties, including, without limitation, disposition of the DIP Collateral and application of net cash proceeds thereof to satisfaction of the DIP Obligations, and (v) taking any other actions or exercising any other rights or remedies permitted under this Interim Order, the other DIP Credit Documentation, or applicable law (including, without limitation, under the New York Uniform Commercial Code, the Cape Town Convention and the Cape Town Protocol), in each case, without further notice to or order of the court unless the Debtors, the Creditors' Committee (if appointed), any other party in interest, and/or the U.S. Trustee have obtained an order of the Court preventing such action.

(e) During the Remedies Notice Period, (i) subject to paragraph 9(f) of this Interim Order, the Debtors shall be prohibited from requesting any further draws under the DIP Credit Facility, the DIP Term Sheet or the other DIP Credit Documentation, and (ii) the Debtors, the Creditors' Committee (if appointed), any other party in interest, and/or the U.S. Trustee shall be entitled to seek an emergency hearing (a "Remedies Hearing") to consider (a) whether a DIP Event of Default has occurred or is continuing and (b) any appropriate relief (including, without

limitation, the Debtors' non-consensual use of any cash collateral), and the DIP Agent and the DIP Secured Parties shall be deemed to have consented to such emergency hearing.

(f) Upon the occurrence and continuation of a DIP Event of Default, the DIP Agent, acting at the direction of the Majority DIP Lenders, may declare the termination, reduction or restriction of any further DIP Commitments to the extent any such DIP Commitments remain.

(g) No rights, protections or remedies of the DIP Secured Parties granted by the provisions of this Interim Order, the DIP Term Sheet or the other DIP Credit Documentation shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use cash collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use cash collateral; or (iii) other than as set forth therein, the terms of any other order or stipulation related to the Debtors' continued use of cash collateral or the provision of adequate protection to any party.

(h) All proceeds realized in connection with the exercise of rights and remedies of the applicable DIP Secured Parties shall be applied (and, as necessary, turned over) in accordance with the terms of this Interim Order, the DIP Term Sheet and the other DIP Credit Documentation.

13. **Proofs of Claim**. None of the DIP Secured Parties shall be required to file proofs of administrative claims in any of these Chapter 11 Cases or any Successor Cases for any administrative claim allowed herein or provided for under the DIP Credit Facility, the DIP Term Sheet or any DIP Credit Documentation. Notwithstanding any order entered by this Court in relation to the establishment of a bar date or administrative bar date in any of these Chapter 11 Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of itself and the other DIP Secured Parties, is hereby authorized and entitled, in its sole and absolute discretion, but not

required, to file (and amend and/or supplement, as it sees fit) an administrative claim and/or aggregate proofs of administrative claims in each of these Chapter 11 Cases or any Successor Cases for any administrative claim allowed or provided for herein, the DIP Term Sheet, the DIP Term Sheet or any DIP Credit Documentation. Any such proof of administrative claim may (but is not required to be) filed as one consolidated proof of administrative claim against all of the Debtors, rather than as separate proofs of claim against each Debtor. Any proof of administrative claim filed by the DIP Agent shall be deemed to be in addition to and not in lieu of any other proof of administrative claim that may be filed by any of the other respective DIP Secured Parties.

14. **Other Rights and Obligations.**

(a) **Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order**. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Credit Facility, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, vacated or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties are deemed to have acted in good faith and are hereby entitled to all the protections and benefits provided by section 364(e) of the Bankruptcy Code.

(b) **Expenses**. The Debtors shall pay, without further Court order, all reasonable and documented fees and expenses of the DIP Secured Parties required by the DIP Term Sheet, including the reasonable and documented fees and expenses of advisors or consultants retained by the DIP Lenders, the Fronting Lender or DIP Agent in accordance with the DIP Term Sheet. Payment of such fees and expenses shall not be subject to allowance or review by this Court or subject to the U.S. Trustee fee guidelines and regardless of whether such fees were incurred prior to or after the Petition Date; *provided* that any time that such professionals seek payment of

fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each professional shall provide summary copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the Debtors, the U.S. Trustee, and lead counsel to, if appointed, the Creditors' Committee (collectively, the "Review Parties"). Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within 10 calendar days after the receipt by the Review Parties (the "Review Period"). If no written objection is received by 12:00 p.m. (prevailing Eastern Time) at the end date of the Review Period, the Debtors shall pay such invoices no later than five business days after the end date of the Review Period. If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.

(c) **No Waiver**. The failure or delay of any DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Term Sheet or any other DIP Credit Documentation, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of any of the DIP Secured Parties, unless any such waiver is pursuant to a written instrument executed by the DIP Agent and/or the affected DIP Secured Party.

(d) **No Third-Party Rights**. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(e) **Consent**. Nothing in this Interim Order shall be construed to convey on any individual DIP Secured Party any consent, voting or other rights beyond those (if any) set forth in the DIP Credit Documentation.

(f) **Application of Proceeds**. The DIP Secured Parties shall be entitled to apply the payments or proceeds of the DIP Collateral in accordance with the provisions of this Interim Order and the other DIP Credit Documentation, as applicable.

(g) **Non-Interference; No Other Liens**. No person or entity, including any holder of prepetition indebtedness of the Debtors or any agent or trustee in respect of any such indebtedness (a "Prepetition Creditor"), shall take or fail to take any action that would impede, interfere with, delay or prevent the Debtors' or the DIP Secured Parties' implementation of the transactions authorized or contemplated by this Interim Order or the other DIP Credit Documentation, including the repayment and satisfaction of the EDC/Axiom Finance Lease Obligations and the substantially concurrent collateralization of the Finance Lease Collateral in favor of the DIP Secured Parties. Except as expressly authorized by this Interim Order or the other DIP Credit Documentation, the Debtors shall not create, incur, grant or permit to exist any lien or security interest on any assets contemplated by the DIP Credit Documentation to be DIP Collateral in favor of any person or entity, including any Prepetition Creditor, other than the DIP Secured Parties.

(h) **Amendment**. As provided in and consistent with their respective rights under the DIP Term Sheet and the other DIP Credit Documentation, the Borrower and the

applicable Loan Parties, as the case may be, with the consent of the Majority DIP Lenders (except as otherwise provided in the DIP Term Sheet or other DIP Documentation) and, to the extent provided in the DIP Credit Documentation, may make any non-material amendment, modification, supplement or waiver of any provision of the Initial Approved Budget or the DIP Credit Documentation, and the Debtors are authorized to enter into any such amendment, modification, supplement or waiver, without further notice to or approval of this Court, and shall provide copies of any such amendments to the U.S. Trustee and counsel for any Creditors' Committee (if appointed). Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof or of any other DIP Credit Documentation (including any material amendment, modification, supplement or waiver thereof) shall be effective unless (i) set forth in writing, (ii) signed by, or on behalf of, the Borrower, the other applicable Loan Parties, and the Majority DIP Lenders (except as otherwise provided in the DIP Term Sheet or other DIP Documentation), and (iii) approved by this Court after notice to the U.S. Trustee and counsel for any Creditors' Committee (if appointed). For the avoidance of doubt, nothing herein shall modify the terms or requirements provided for under the DIP Credit Documentation or otherwise agreed among the applicable DIP Secured Parties for amending, modifying, supplementing or waiving the provision of any of the DIP Credit Documentation.

(i) **Priority of Terms**. To the extent of any conflict between or among (i) the express terms or provisions of any of the DIP Credit Documentation, the DIP Credit Facility Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" any of the other DIP Credit Documentation, the terms and provisions of this Interim Order shall govern.

(j) **Survival of This Interim Order**. The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any order which may be entered (i) confirming any Plan in these Chapter 11 Cases, (ii) converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of these Chapter 11 Cases, (iv) withdrawing of the reference of any of these Chapter 11 Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of these Chapter 11 Cases in this Court. The terms and provisions of this Interim Order, including the DIP Liens and DIP Superpriority Claims granted pursuant to this Interim Order, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens and DIP Superpriority Claims shall maintain their respective priorities as provided by this Interim Order, the DIP Credit Facility, and the other DIP Credit Documentation (as the case may be) until all of the DIP Obligations have been indefeasibly paid in full (other than contingent indemnification obligations for which no claim has been asserted) or as otherwise provided in the DIP Credit Documentation.

(k) **[Reserved]**

(l) **No Discharge**. The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such plan of reorganization.

(m) **Credit Bid Rights**. In connection with any sale process authorized by this Court, whether effectuated through section 363 or section 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, and subject in all

respects to the DIP Credit Documentation, the DIP Agent (directly or via one or more acquisition vehicles), at the direction of the Majority DIP Lenders, shall have the unqualified right to credit bid all or any portion of the then outstanding DIP Obligations in connection with the sale of any Loan Party's assets, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, pursuant to section 363(k) of the Bankruptcy Code. The DIP Agent, at the direction of the Majority DIP Lenders, on behalf of the DIP Lenders, shall have the right to assign, sell, or otherwise dispose of its right to credit bid in connection with any credit bid by or on behalf of the DIP Secured Parties to any acquisition entity or joint venture formed in connection with such bid.

(n) **Rights Cumulative**. The rights and obligations, including any consent rights, as provided under this Interim Order shall be cumulative, and not alternative, to, and not otherwise derogate from, the rights and obligations as provided under the DIP Credit Documentation.

(o) **Notices to Creditors' Committee**. If and after a Creditors Committee is formed by the Office of the U.S. Trustee, then without limiting the terms of any DIP Credit Documentation, the Borrower shall deliver a copy of each Approved Budget to lead counsel and, if any, financial advisors to the such Creditors' Committee as soon as reasonably practicable after it has been approved by the DIP Agent (at the direction of the Majority DIP Lenders) or Majority DIP Lenders.

15. **Limitation of Liability**. In determining to make any loan under the DIP Term Sheet pursuant to this Interim Order or the other DIP Credit Documentation, the DIP Secured Parties in their capacity as such shall not be deemed to be in control of the operations of the Debtors to be acting as a "responsible person" or "owner or operator" with respect to the operation or management

of the Debtors. Furthermore, nothing in this Interim Order or the other DIP Credit Documentation shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors. None of the DIP Secured Parties in their capacity as such or any of their affiliates are successors to the Debtors or their estates by reason of any theory of law or equity, and none of the DIP Secured Parties or any of their affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates.

16. **Section 506(c) Claims**. Nothing contained in this Interim Order shall be deemed a consent by the DIP Secured Parties to any charge, lien, assessment, or claim against, or in respect of, the DIP Collateral, under sections 506(c) or 105(a) of the Bankruptcy Code, or otherwise.

17. **Final Hearing.** The following shall apply with respect to the Final Hearing:

(a) The Final Hearing is scheduled for October 9, 2026 at 10:00 a.m. before this Court.[9]

(b) *Objections*. Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon (a) the U.S. Trustee; (b) entities listed as holding the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) proposed counsel to the Debtors, Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn.: Evan R.

[9] Because, as described further in the DIP Term Sheet, the grant of DIP Liens for the DIP Obligations being provided under the Interim Order may materially differ from the DIP Liens to be provided under the Final Order to the extent that the Final Order is the Priming Order (i.e., an order providing for non-consensual priming liens on prepetition collateral, as set forth in the DIP Term Sheet), to the extent that the Final Order is the Priming Order, the Debtors, DIP Agent and DIP Secured Parties shall file the form of the proposed Final Order as soon as practicable, but, in any event, at least 14 days prior to the date of the Final Hearing, with the deadline to file any objections to the form of proposed Final Order being at least 3 days prior to the Final Hearing. To the extent that the Final Order is not the Priming Order, the Debtors, DIP Agent and DIP Secured Parties shall file the form of the proposed Final Order in any event at least 7 days prior to the date of the Final Hearing, with the deadline to file any objections to the form of proposed Final Order being at least 3 days prior to the Final Hearing. Furthermore, the Debtors, DIP Agent and DIP Secured Parties shall file the form of DIP Credit Agreement as soon as practicable, but, in any event, at least 7 days prior to the date of the Final Hearing.

Fleck, Jaimie Fedell); (d) counsel to the DIP Secured Parties (other than the DIP Agent), Vedder Price P.C., 1633 Broadway, 31st Floor, New York, New York 10019 (Attn: Michael Edelman and Cameron Gee); (e) counsel to the DIP Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004 (Attn: Gregg S. Bateman (bateman@sewkis.com) and John R. Ashmead (ashmead@sewkis.com)); (f) counsel to the ad hoc group for the Prepetition Bonds, Hogan Lovells Cadwalader US LLP, 390 Madison Avenue, New York, NY 10017 (Attn: David P. Simons; Christopher R. Bryant; Raymond M. Navaro; (h) the Creditors' Committee (if appointed) and its legal counsel, (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; and (j) any other party that has filed a request for notices with this Court pursuant to Bankruptcy Rule 2002, with a copy to the Court's chamber, in each case to allow actual receipt by the foregoing no later than the date as determined in accordance with footnote 9 of this Interim Order, and otherwise in conformity with the Court's order establishing notice and case management procedures.

(c) The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any party that has filed a request for notices with this Court.

18. **<u>Headings</u>**. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

19. **Retention of Jurisdiction**. This Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Credit Facility, the DIP Credit Documentation and/or this Interim Order.

20. **Notice of Extensions of Milestones**. To the extent any milestone under any DIP Credit Documentation is extended in accordance with the terms thereof, a notice of such extension shall be filed on the docket for these Chapter 11 Cases no later than 1 business day after such extension is effectuated.

**SO ORDERED** by this Court on September 16, 2026.

***/s/ Lisa G. Beckerman***
**THE HONORABLE LISA G. BECKERMAN**
**UNITED STATES BANKRUPTCY JUDGE**